UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRINCE ROBINSON,

        Plaintiff,

                                      Case No.  17-CV-13128
vs.                                HON.  GEORGE CARAM STEEH

MGM GRAND DETROIT, LLC,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (Doc. 43)

Plaintiff Prince Robinson worked as a valet attendant for Defendant

MGM Grand Detroit, LLC ("MGM") for fourteen years prior to his

termination on November 15, 2016.  In his fourteen-count Complaint,

Robinson alleges he was terminated in retaliation for taking medical leave

for treatment of his plantar fasciitis, in violation of the Family and Medical

Leave Act ("FMLA").  He also alleges retaliation, hostile work environment,

race discrimination, and sexual harassment in violation of Title VII and

Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), disability discrimination

and retaliation in violation of the American's with Disabilities Act ("ADA"),

and Michigan's Persons with Disability Act ("PWDCRA"), and negligent

retention, training, and supervision, and negligent infliction of emotion

distress under state common law. Now before the court is Defendant's motion for summary judgment as to all claims. For the reasons set forth below, Defendant's motion for summary judgment shall be granted.

## I. Factual Background

### A.    Plaintiff's Employment

The court construes the facts in the light most favorable to the nonmoving party, here Robinson. Robinson began working for MGM as a valet attendant on June 27, 2002. (Doc. 46, Ex. A). His job responsibilities included retrieving cars from an underground parking structure, which frequently involved running on hard pavement. (Doc. 46, Ex. B, C at 42). According to Robinson's supervisor, Lisa Conner, he was frequently arriving late for work or barely on time, and had been disciplined for an instance where he was rushing to clock in on time and knocked over and injured a co-worker. (Doc. 43, Ex. D at ¶¶ 11-12, Ex. A at 289-90).

### B.    Plaintiff's Plantar Fasciitis

Robinson sought medical treatment for foot pain around 2003, and was diagnosed with plantar fasciitis. (Doc. 46, Ex. C at 142-43). He was first treated with cortisone shots, and later was fitted with orthotics for his shoes. *Id.* at 143. At his deposition, Robinson testified that he was able to work with his orthotics. (Doc. 43, Ex. A at 209-10). Despite the orthotics,

he continued to suffer foot pain which worsened over time. (Doc. 46, Ex. C at 159). In March, 2016, Robinson applied to take intermittent leave under the FMLA, but his request was denied when he failed to submit certification from his physician. (Doc. 43, Ex. G at PgID 934). In September, 2016, the pain became so debilitating that he was unable to work until new orthotics could be made. (Doc. 46, Ex. C at 163). He submitted another request for FMLA leave until new orthotics could be fashioned. (Doc. 43, Ex. A at 184, 225). Robinson was treated by a podiatrist, Charles Young, who wrote a disability certificate that Robinson was under his care from October 10, 2016 to October 25, 2016, during which time, Robinson was reported to be totally incapacitated due to his plantar fasciitis. (Doc. 46, Ex. J).

Robinson was approved for FMLA leave as of September 14, 2016. (Doc. 46, Ex. C at 161-62). Robinson claims his supervisor, whom he identities only by his first name, Enrique, told him "congratulations on your FMLA approval." (Doc. 46, Ex. C at 221). During his sick time and vacation time in September, 2016, Robinson tried to secure a business loan in Atlanta. (Doc. 43, Ex. J). MGM argues that Robinson used false identification and falsified corporate documents in his attempt to secure the loan, which it maintains would have been grounds to terminate him, had it known of this activity. (Doc. 43, Ex. J, K at ¶¶ 4-5).

**C.    Robinson Fails to Use Time Clock and Improperly Uses Exception Log to Record Hours Worked**

On September 28, 2016, Robinson arrived late for his shift and received .5 disciplinary attendance points.  (Doc. 43, Ex. L).  On September 30, 2016, Robinson arrived late for work again.  Rather than clock in late, he signed the "exception log" noting that he worked from 6 p.m. to 2 a.m. (Doc. 43, Ex. M, Ex. A at 117, 121).  In fact, Robinson arrived at the casino employee entrance at 6:02 p.m., changed into his uniform until 6:06 p.m., used a hotel elevator to the hotel lobby, and arrived at the casino valet office at 6:10 p.m.  (Doc. 43, Ex. M at PgID 1016-17).  According to MGM, the exception log is only to be used when there is a technical problem with the time clock that prevents an employee from clocking in.  No supervisor signed the exception log for Robinson as required under MGM policy. (Doc. 43, Ex. D at ¶18).  Thus, on October 1, 2016, MGM relied on surveillance video to verify Robinson's time recording in the exception log, and determined that Robinson arrived late and did not report to the casino valet office until 6:10 p.m.  (Doc. 43, Ex. M at PgID 1016-17).

**D.    Robinson's Termination for Falsification of Time Records**

On October 29, 2016, when Robinson attempted to return to work, MGM served him a notice of Suspension Pending Investigation ("SPI") for his falsification of time records on September 30, 2016.  (Doc. 43, Ex. 0).

Robinson's due process meeting was held on November 8, 2016 with his union representative present. (Doc. 43, Ex. M at PgID 1016). Robinson admitted he was late, and that he used the exception log to avoid being docked in pay or receiving disciplinary points for tardiness. (Doc. 43, Ex. A at 276-78). The due process hearing was conducted by Labor Relations Partner Wanda Parker, who recommended that Robinson be terminated. (Doc. 46, Ex. M at PgID 1016-17). Parker reported the results of the time clock fraud investigation to her supervisor, Tara McIntosh, Senior Employee and Labor Relations Partner, and Marc Guastella, then Vice President in charge of the valet department. McIntosh and Guastella decided to fire Robinson. (Doc. 43, Ex. D at ¶ 26; Ex. P). MGM notified Robinson that he was terminated effective November 15, 2016. (Doc. 43, Ex. P, Doc. 46, Ex. C at 123). MGM has terminated other employees for similar misconduct. (Doc. 43, Ex. D at ¶ 21, Ex. N at 4).

## E.      Robinson's Letter to Human Resources

After his use of the exception log on September 30, 2016, Robinson was out of work, either on vacation time or FMLA leave, until he returned to work in the evening of Friday, October 28, 2016. (Doc. 46, Ex. C at 184, Doc. 43, Ex. L, Ex. O). He was terminated at the end of his shift in the early morning hours of Saturday, October 29, 2016. (Doc. 46, Ex. C at

186).  While off work, Robinson heard a rumor he was going to be terminated.  (Doc. 46, Ex. C. at 183).  He then drafted a five-page letter complaining about his supervisor, Lisa Conner, for gripes dating back to 2007, which he dropped off in a mailbox outside the Human Resources office on his first day back to work.  (Doc. 46, Ex. C at 185, 189, Doc. 43, Ex. Q).  Robinson claims he was terminated in retaliation for the submission of that letter.  In that letter, Robinson accused Conner of having "the biggest, nastiest, uncontrollable mouth this side of the Player's Club," and complained that she is "bald-headed, divorced and can't have any kids." *Id.* at PgID 1038-39.  Robinson claimed that Conner created a hostile environment.  Specifically, he claimed that Conner told a pregnant female valet, "I bet you're going to be glad when you drop that bitch." *Id.* at PgID 1038. He also complained that he heard a rumor that Conner removed her panties in her car with the door opened and said, "I got to let this m— f —- breathe." *Id.* at PgID 1039.

Robinson also alleged that in 2015, Conner told him to go "get some sun," allegedly a reference to his light complexion. *Id.*  At his deposition, Robinson testified that he and Conner are both African-American and share the same light complexion.  (Doc. 43, Ex. A at 195).  He also alleged that Conner's agenda is to fire anyone with FMLA approval.  (Doc. 43, Ex. Q at

PgID 1040).  He claimed that Conner must have breached the privacy of his medical information, because his supervisor Enrique congratulated him on receiving FMLA leave.  *Id.*  He also alleged that Conner made a reference to his penis, by commenting, "it smells like you washed it."  *Id.* at PgID 1041.  He further claimed that Conner's negative remarks against him date back to 2007 when she allegedly called him "pathetic" and told him that, "I feel sorry for your wife."  *Id.*  Robinson also claims that Conner referred to another man as a "real man," which he claims implied he was not.  *Id.* at PgID 1039.  Finally, he complains that he is being targeted "because of many reasons," including his status "as a veteran at the highest of a two tier pay plan."  *Id.* at PgID 1041.  These allegations set forth in Robinson's October 28, 2016 letter to Human Resources form the factual predicate for his discrimination and retaliation claims in this lawsuit.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has

affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

### A.    FMLA Retaliation (Count I)

Robinson claims he was terminated in retaliation for taking FMLA leave. (Count I). Where, as here, Robinson sets forth an FMLA retaliation claim based on circumstantial evidence, it is evaluated under the familiar *McDonnell Douglas* burden-shifting framework. *Donald v. Sybra, Inc.,* 667 F.3d 757, 762 (6th Cir. 2012). To establish a prima facie case of retaliation under the FMLA, Robinson must show that: (1) he was engaged in a statutorily protected activity; (2) MGM knew that he was exercising his

FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Id.* at 761. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007).

Robinson alleges that his protected activity was the taking of FMLA leave. (Doc. 1 at PgID 9-10, Doc. 46 at PgID 1104). There is no dispute that Robinson took intermittent FMLA leave, that this was known to MGM, and that he was terminated. Thus, only the fourth causation prong of the prima facie case is in dispute. The Sixth Circuit has found that temporal proximity between the protected activity and the adverse employment action may be sufficient to establish a prima facie case of retaliation. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases). Here, Robinson attempted to return to work from FMLA leave on Friday, October 28, 2016. During the early morning hours of his shift the next day, Robinson was suspended, served with a notice of Suspension Pending Investigation, and after a due process hearing, was

formally terminated two weeks later.  Given this close proximity in time, Robinson has satisfied his prima facie case.

The next step of the *McDonnell Douglas* analysis requires the employer to offer a legitimate, nondiscriminatory reason for discharging Robinson.  *Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007).  "Fraud and dishonesty constitute lawful, non-retaliatory bases for termination."  *Seeger*, 681 F.3d at 283–84.  Here, MGM asserts that it had a legitimate, nondiscriminatory reason for terminating Robinson because he failed to use the time clock as required, and falsified his time records by using the exception log, noting he had reported to work at 6 p.m., when in fact, he did not begin working until 6:10 p.m.  Robinson intentionally used the exception log to avoid detection of his lateness.  MGM also references Robinson's history of repeated tardiness in light of the false time entry as the reason for his termination.

MGM also argues it could have legitimately discharged Robinson for his alleged fraudulent activities when he sought to secure a business loan in September, 2016.  But after-acquired evidence of wrongdoing by an employee is not per se a bar to all relief, but generally is only relevant to the question of damages.  *Serrano v. Cintas Corp.*, 699 F.3d 884, 903 (6th Cir. 2012) (citing *McKennon v. Nashville Banner Publ'g*, 513 U.S. 352, 358

(1995)).  Accordingly, the court does not consider MGM's after-acquired evidence argument in the liability phase.

Even without considering Robinson's fraudulent business activities, which he has not disputed, MGM has set forth a legitimate reason for his termination – his fabrication of fraudulent time records.  Having set forth a legitimate reason for Robinson's termination, the burden shifts back to Robinson to show that the stated reason is pretextual.  *Id.* at 285.  Unlike the minimal burden necessary to establish the prima facie case, the Sixth Circuit "is clear that temporal proximity cannot be the sole basis for finding pretext."  *Donald*, 667 F.3d at 763 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)).  "However, 'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'"  *Seeger*, 681 F.3d at 285 (quoting *Bell v. Preffix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009)).

Thus, the court must consider the other evidence Robinson relies upon.  In order to prove causation, Robinson alleges that his supervisor's comment, "Congratulations on your FMLA leave" is evidence of bias.  But nothing about that comment suggests his supervisor begrudged him for taking leave.  In fact, the opposite conclusion may be reached as his supervisor appears to acknowledge the benefit to Robinson that his request

for leave is approved.  Robinson also relies on his deposition testimony that it was "well known" that his employer had a bias against employees using FMLA because of the staffing difficulties that it posed.  But rumor and hearsay are not a sufficient basis for opposing summary judgment.  The Sixth Circuit has held that "the party opposing summary judgment must show that []he *can* make good on the promise of the pleadings by laying out enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary. Such evidence submitted in opposition to a motion for summary judgment must be admissible."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotation marks and citation omitted).  Thus, hearsay evidence must be disregarded.  *Id.*

Finally, Robinson relies on a photocopy of a meme posted on Instagram showing the rapper Snoop Dogg with the caption, "How supervisors look when you have FMLA." (Doc. 46, Ex. F).  There is no evidence in the record as to when the meme was posted, who posted it, or how it is linked to MGM.  An individual commented on the meme, "you ain't lying dawg!!" and Plaintiff contends the comment was made by an MGM employee.  Even assuming the photocopy would be admissible at trial, this isolated document is insufficient to overcome MGM's proofs that Plaintiff

was terminated for falsifying time records, that other employees were terminated for similar misconduct, and that other employees took FMLA leave without negative consequences.

MGM's stated reason for terminating Robinson was for submitting fraudulent time records. MGM's employment policies specifically state that just cause for immediate termination exists when an employee "mak[es] false statements on, submit[s] fraudulent or altered documents in connection with . . the Time and Attendance Record." (Doc. 43, Ex. C at PgID 907). MGM has submitted the affidavit of Conner and deposition testimony of Parker that other employees, including supervisors, were terminated for similar misconduct. (Doc. 43, Ex. D at ¶ 21, Ex. N at 4). Robinson has not disputed this evidence. Accordingly, Robinson's proofs are insufficient to raise a genuine issue of material fact that he was terminated in retaliation for using FMLA leave and Count I shall be dismissed.

**B. Disability Discrimination (Counts IV, VIII)**

Robinson alleges disability discrimination in violation of the ADA and PWDCRA (Counts IV, VIII). The ADA and PWDCRA "substantially mirror" each other. *Donald,* 667 F.3d at 764. Therefore, "claims under both statutes are generally analyzed identically." *Cummings v. Dean Transp.,*

*Inc.*, 9 F. Supp. 3d 795, 804–05 (E.D. Mich. 2014) (citing *Steward v. New Chrysler,* 415 F. App'x 632, 641 (6th Cir. 2011)).

To make out a *prima facie* case of employment discrimination through indirect evidence under the ADA, a plaintiff must show that 1) he is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011) (citations omitted).  Under the *McDonnel Douglas* burden-shifting framework, once the plaintiff establishes his *prima facie* case, the burden shifts to the employer to show a nondiscriminatory reason for the adverse employment decision.  If the employer does so, the burden shifts to the plaintiff to show the reason given is pretextual.  *Id.* at 259.  The plaintiff's disability must be a "but-for" cause of his termination to prove discrimination under the ADA.  *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (giving the history of why the court applies the "but-for" causation test instead of the "motivating factor test" to the ADA).

MGM argues that plantar fasciitis does not qualify as a disability under the ADA or PWDCRA, that the decision makers who decided to

terminate him did not know of his plantar fasciitis, that Robinson was able to perform his job duties with the use of orthotics, and many other employees had the same condition and remained employed. This court need not decide whether Robinson's plantar fasciitis constitutes a disability under the ADA or PWDCRA, as Robinson has failed to show that MGM discharged him because of his disability. Robinson testified that he complained of foot pain to his supervisors at MGM prior to Conner becoming his supervisor in 2005. (Doc. 46, Ex. C at 144-48). Yet, Robinson does not allege any discrimination on the basis of his plantar fasciitis other than his termination over ten years later in November, 2016. Given the absence of any evidence that he was terminated because of his alleged disability, MGM is entitled to summary judgment on Robinson's disability discrimination claims pled in Counts IV and Count VIII.

**C. Retaliation in Violation of the ADA and PWDCRA (Counts XI and XII)**

Robinson also alleges that his termination was in retaliation for his protected activity in violation of the ADA and PWDCRA. (Counts XI and XII). It is not clear what he considered his "protected activity" under those statutes. Perhaps he means the drafting of his October 28, 2016 letter, but nowhere in that letter does Robinson allege that he was discriminated against because of his plantar fasciitis.

The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter."  42 U.S.C. § 12203(a).  "Discrimination here means retaliation – that 'but for' an employee's statutorily protected activity the employer would not have taken the 'adverse employment action.'" *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (internal quotation marks and citations omitted).  Courts use the *McDonnell-Douglas* burden-shifting framework to assess retaliation claims.  *Id.*  The plaintiff bears the initial burden to establish a prima facie case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action.  *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).  "If a plaintiff does so, the defendant has a burden of *production* to articulate a nondiscriminatory reason for its action."  *Ford Motor Co.*, 782 F.3d at 767 (emphasis in original).  "If the defendant meets its burden, the plaintiff must prove the given reason is pretext for retaliation."  *Id.*  "To demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was not the

real reason for its action, *and* that the employer's real reason was unlawful." *Id.* (emphasis in original).

"A letter to an employer constitutes protected activity if it opposes unlawful activity with some specificity, as opposed to merely a 'vague charge of discrimination.'" *Sharp v. Waste Mgmt., Inc.*, 47 F. Supp. 3d 584, 601 (S.D. Ohio 2014), *aff'd sub nom. Sharp v. Profitt*, 674 F. App'x 440 (6th Cir. 2016) (citing *Stevens v. Saint Elizabeth Med. Ctr., Inc.,* 533 F. App'x. 624, 631 (6th Cir. 2013)).  Here, the October 28, 2016 letter does not constitute protected activity within the context of the ADA and PWDCRA. In that letter, Robinson complains about Conner, her alleged hostility towards employees who seek to use FMLA leave, and the fact that he is in "constant pain" after 15 years of running on concrete.  (Doc. 43, Ex. Q). But Robinson never mentions his plantar fasciitis by name, nor does he allege any discrimination based on his disability, only that he felt his job was threatened because he took FMLA leave.  Retaliation for taking FMLA leave is governed by the FMLA, and is not covered under the ADA or PWDCRA.  Having failed to complain of any disability discrimination in his October 28, 2016 letter, MGM is entitled to summary judgment on Robinson's ADA or PWDCRA retaliation claims.  (Count XI, XII).  Also, even if the October 28, 2016 letter could be construed as protected activity

under the ADA and PWDCRA, Robinson has failed to raise a genuine issue of material fact that he was terminated for drafting that letter.  For this additional reason, MGM is also entitled to summary judgment as to Counts XI and XII.

## D.    Title VII and ELCRA Retaliation (Counts II and V)

Next, the court considers Robinson's claim that his termination was retaliation for his sending the October 28, 2016 letter to Human Resources in violation of Title VII and ELCRA.  (Counts II and V).  At the summary-judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on a retaliation claim. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771–72 (6th Cir.  2018) (citing *Jackson*, 191 F.3d at 658).  Once again, because Robinson offers only circumstantial evidence of retaliation, the *McDonnell Douglas* burden-shifting framework applies. *Id.* at 771.

Under that paradigm, a plaintiff has the initial burden to establish a prima facie case of retaliation under Title VII by establishing that: (1) he engaged in protected activity when he made his discrimination complaint; (2) defendant knew about his exercise of the protected activity; (3) defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the

adverse employment action.  *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013).

Once again, Robinson fails to satisfy the fourth prong.  He has come forward with no circumstantial evidence to suggest that his complaints of race discrimination and a hostile work environment were the reason for his termination.  He relies on the proximity in time between the submission of his letter and his termination, but as discussed above, temporal proximity standing alone is insufficient to show pretext.  And temporal proximity is all Robinson relies upon.  Also, Robinson had heard a rumor he was about to be fired, which was the reason he wrote the letter in the first place.  (Doc. 43, Ex. Q at PgID 1038).  As MGM aptly points out in its brief, "an employer need not refrain from carrying out a previously reached employment decision because an employee subsequently claims to be engaging in protected activity."  *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 137 (3rd Cir. 2006) (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001)).

Even if MGM decided to terminate Robinson after receipt of the letter, no evidence, circumstantial or otherwise, suggests MGM terminated him because he wrote the letter.  Accordingly, MGM is entitled to summary

judgment on Robinson's claims of retaliation in violation of Title VII and ELCRA. (Counts II and V).

**E.      Race and Sexual Harassment Claims under Title VII and ELCRA (Counts III, VI, VII, IX, X)**

**1.      Circumstantial Evidence of Hostile Work Environment**

Next, the court considers Robinson's claim of race or sex harassment in violation of Title VII and ELCRA. (Counts III, VI, VII, IX, X). The same principles that govern sexual harassment also govern claims of race discrimination. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999). Race discrimination claims brought under ELCRA and Title VII are analyzed under the same evidentiary framework. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004); *Ondricko v. MGM Grand Detroit, LLC.*, 689 F.3d 642, 652-53 (6th Cir. 2012). Once again, Robinson relies on circumstantial evidence; thus, the court employs the familiar *McDonnell Douglas* burden-shifting framework approach.

To establish a prima facie case of a race or sex harassment under Title VII or ELCRA, a plaintiff must demonstrate that (1) he was a member of a protected class; (2) he was subjected to unwelcome racial or sexual harassment; (3) the harassment was based on race or sex; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the

employer knew or should have known about the harassing conduct but failed to take corrective action or there is a basis for employer liability. *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013); *Fullen v. City of Columbus*, 514 F. App'x 601, 606-07 (6th Cir. 2013) (Title VII); *Sheridan v. Forest Hills Pub. Sch.*, 247 Mich. App. 611, 620-21 (2001) (ELCRA).

Robinson's claim fails at the fourth element. To satisfy the fourth element of the *prima facie* case, Robinson must show that the harassment was "severe or pervasive enough to create an objectively hostile or abuse work environment—an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The environment must also have been hostile or abusive from the subjective perspective of the plaintiff. *Id.* In making this assessment, the court examines the totality of the circumstances, considering "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. To be considered harassment, the conduct complained of must be "so 'severe or pervasive' as to 'alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citation omitted). For the reasons

discussed below, Robinson's proofs are insufficient to create a genuine issue of material fact that the conduct alleged was so severe and pervasive as to create an abusive working environment.

Here, Robinson relies on the following proofs. In 2015, his supervisor, Conner, told him that he needed "some sun." (Doc. 46, Ex. C at 195). He claims this is evidence of racial discrimination. But the record demonstrates that Conner, like Robinson, was an African American with the same light complexion as him. *Id.* Thus, this one isolated remark by another African American does not create a racially hostile work environment. Isolated remarks are insufficient to constitute pervasive or severe harassment. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 513 (6th Cir. 2011) (holding that "despicable" "racist" statements were not sufficiently "severe" or "pervasive" because they were "isolated" and were not physically threatening or humiliating).

Robinson also alleges that in 2013, Conner introduced another man to him as a "real man," which he felt was derogatory to his own masculinity. (Doc. 46, Ex. C at 196). In October, 2015, Conner touched his beard without his permission, *id.* at 227, and in that same month, Conner told him, "it smelled like he washed it," which he claims was in reference to his penis.

*Id.* at 227-28.  He also relies on a rumor he heard that Conner removed her

underwear in front of other valet attendants.  *Id.* at 192-93.

The Sixth Circuit has found that an employee's workplace did not

constitute a hostile environment where the misconduct alleged was much

more pervasive and extreme than here.  In *Burnett v. Tyco Corp.*, 203 F.3d

980, 981, 985 (6th Cir. 2000), for example, the court found that a hostile

environment did not exist even where a supervisor placed a pack of

cigarettes inside plaintiff's tank top and bra strap, and made sexual

remarks two weeks, and again, some six months later.  Also, in *Clay v.

United Parcel Serv., Inc.*, 501 F.3d 695, 700-02, 707-08 (6th Cir. 2007), the

court affirmed the dismissal of plaintiff's racially hostile work environment

claim where the plaintiff relied on fifteen specific instances over a two-year

time period, including false accusations of workplace misconduct, repeated

criticism of activities for which white employees were treated more

favorably, and forcing plaintiff to perform additional job duties. The Sixth

Circuit held that this pattern of harassing conduct was insufficiently serious

or pervasive to create an objectively hostile work environment.  *Id.* at 708.

So too here.  Robinson relies solely on a handful of isolated remarks

and conduct by his valet supervisor, Conner, all of which occurred well over

a year prior to his dismissal.  As discussed previously, rumor and hearsay

cannot be the basis for overcoming a motion for summary judgment. *Alexander*, 576 F.3d at 558.  Considering all of Conner's alleged statements and the allegation that she touched Robinson's beard once, Robinson has failed to show that Conner's conduct was so severe and pervasive that it altered his ability to perform his work as a valet attendant. Accordingly, MGM is entitled to summary judgment on all of Robinson's claims of race and sex harassment and hostile work environment.

### 2.  Robinson's Failure to Report Alleged Harassment

In addition to Robinson's failure to show severe and pervasive harassment, MGM also has established an affirmative defense to liability. The Sixth Circuit has held that there can be no hostile work environment where the employer demonstrates (a) that it exercised reasonable care to prevent and correct promptly any sexually or racially harassing behavior; and (b) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.  *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008) (citing *Faragher*, 524 U.S. at 807).  MGM meets both requirements.

Here, MGM has an anti-discrimination, harassment, and retaliation policy set forth in its employee handbook. (Doc. 43, Ex. B).  The employee

handbook sets forth a procedure for employees to report any alleged discrimination or harassment to certain persons in the Human Resources Department or to any member of management, and establishes a protocol for the investigation of such complaints. *Id.* at PgID 902. Parker testified that a list of contact persons for employees was posted on the premises, as well as a tollfree hotline for reporting concerns. (Doc. 46, Ex. E at 36). Robinson was aware of the hotline as he used it to complain about his suspension and Conner on November 1, 2016. (Doc. 43, Ex. T). Robinson admits he never complained of Conner's alleged harassment until years after it took place when he heard a rumor he was to be terminated when he returned from FMLA leave.

The Sixth Circuit has held that a two-month delay in reporting harassment to take advantage of an employer's corrective opportunities is unreasonable. *E.E.O.C. v. AutoZone, Inc.*, 692 F. App'x 280, 286 (6th Cir. 2017) (citing *Thornton*, 530 F.3d at 457–58). Here, Robinson has not shown that waiting at least one year, and in some instances three years, to report alleged harassment is reasonable. For this additional reason, MGM is also entitled to summary judgment of Robinson's race and sex harassment and hostile work environment claims.

**F.    Common Law Claims (Counts XIII, XIV)**

Finally, the court considers Robinson's state common law claims.

Count XIII alleges negligent retention, training, and supervision.  And Count

XIV alleges negligent infliction of emotional distress.  In its motion for

summary judgment, MGM argued it is entitled to summary judgment as to

Count XIII because "Michigan has never recognized a claim for negligent

hiring by holding an employer liable for an employee's acts resulting in

economic injury or for any kind" absent a foreseeable act of physical

violence.  *Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629, 637-38

(E.D. Mich. 2012) (quoting *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793,

797 (E.D. Mich. 1996)).  In his response brief, Robinson has not addressed

MGM's argument in favor of dismissal of Count XIII.  Accordingly, Robinson

is deemed to have waived the claim, and summary judgment shall enter for

MGM on the negligent retention, training, and supervision claim.  *See*

*Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013).

The court turns lastly to Robinson's claim for negligent infliction of

emotional distress.  The Michigan Court of Appeals has recognized that it

has never "appl[ied] the tort of negligent infliction of emotional distress

beyond the situation where a plaintiff witnesses negligent injury to a third

person and suffers mental disturbance as a result."  *Hayes v. Langford*, No.

280049, 2008 WL 5158896, at *4 (Mich. Ct. App. Dec. 9, 2008) (quoting

*Duran v. Detroit News, Inc.,* 200 Mich. App. 622, 629 (1993)). The tort of

negligent infliction of emotional distress has been uniquely limited to

"bystander recovery" actions. *Id.* (citing *Nugent v. Bauermeister,* 195

Mich.App. 158, 159 (1992)).  Robinson's negligence claim based on his

own alleged emotional and mental injuries simply does not fall within the

category of "bystander recovery" actions.  Accordingly, MGM's motion for

summary judgment as Robinson's negligent infliction of emotional distress

claim shall be granted.

## IV. Conclusion

For the reasons set forth above, MGM's motion for summary

judgment (Doc. 43) is GRANTED.

**IT IS SO ORDERED**.

Dated:  June 12, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 12, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---